# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 12-254V
Filed: October 4, 2017
Not for Publication

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| MARK MILES, Legal Representative of a Minor Child, J.M., | * * * * |
| Petitioner, | * |
| v. | * * |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | * * * |
| Respondent. | * * |

Attorneys' interim costs decision; respondent defers to Special Master's discretion

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

John F. McHugh, New York, NY, for petitioner.
Darryl R. Wishard, Washington, DC, for respondent.

**MILLMAN, Special Master**

### DECISION AWARDING ATTORNEYS' INTERIM COSTS[1]

On August 30, 2017, petitioner filed an Application for Payment of Petitioners' [sic] Interim Expenses, requesting $79,034.50[2] in attorneys' interim costs and petitioner's personal costs of $25,438.65. Petitioner did not seek attorneys' fees at this time. No decision on entitlement has been issued.

On September 7, 2017, respondent filed his response.

---

[1] Because this unpublished decision contains a reasoned explanation for the special master's action in this case, the special master intends to post this unpublished decision on the United States Court of Federal Claims's website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). Vaccine Rule 18(b) states that all decisions of the special masters will be made available to the public unless they contain trade secrets or commercial or financial information that is privileged and confidential, or medical or similar information whose disclosure would constitute a clearly unwarranted invasion of privacy. When such a decision is filed, petitioner has 14 days to identify and move to redact such information prior to the document's disclosure. If the special master, upon review, agrees that the identified material fits within the banned categories listed above, the special master shall redact such material from public access.

[2] This amount should be $79,099.84.

For the reasons set forth below, the undersigned awards petitioner $58,144.84 in attorneys' interim costs and $21,216.65 in personal costs incurred up to and including August 30, 2017, when petitioner filed his application for attorneys' interim costs and personal costs.

**PROCEDURAL HISTORY**

On April 18, 2012, petitioner Mark Miles filed a petition on behalf of his son, J.M., under the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa-10–34 (2012) ("Vaccine Act"). Petitioner alleged that the influenza ("flu") vaccine his son received on October 1, 2009 triggered a sudden relapse of his nephrotic syndrome. Pet. Preamble and ¶ 2. The case was assigned to the undersigned on April 18, 2012.

The initial status conference was held on May 25, 2012. The undersigned ordered petitioner to file the medical records, petitioner's affidavit, and the treating doctor's report and CV by July 7, 2012. The undersigned issued an Order on July 18, 2012 granting petitioner's motion for an extension of time until August 8, 2012 to submit medical records and an expert report, which petitioner filed on August 6, 2012.

A telephonic status conference was held on August 21, 2012. The undersigned discussed the timeline of J.M.'s chronic recurrent nephrotic syndrome which began on August 15, 2007. See Order dated August 22, 2012. The undersigned discussed some of the weaknesses in petitioner's case and Dr. Albert Quan's expert report. Id. Respondent's counsel said his client was willing to receive a reasonable demand from petitioner. The undersigned set a deadline of October 5, 2012 for petitioner to make a demand on respondent. Petitioner made no demand. On October 23, 2012, petitioner filed supplemental medical records regarding the timing of the relapse and VAERS report. On April 4, 2013, petitioner filed a supplemental expert report from Dr. Quan.

On July 10, 2013, respondent filed his Rule 4(c) Report. On November 15, 2013, respondent filed Dr. Levinson's immunological expert report.

On December 3, 2013, a telephonic status conference was held. Petitioner expressed an interest in finding an immunological expert to counter Dr. Levinson. See Order dated December 3, 2013. The undersigned set a deadline of March 3, 2014 for petitioner to file an immunological expert report and Dr. Quan's expert report responding to respondent's expert reports.

On February 18, 2014, petitioner filed a Motion for Interim Attorney Fees and Costs and a Motion for Substitution of Counsel. On February 19, 2014, the parties filed a stipulation of facts in which they agreed on an appropriate amount for interim attorneys' fees and costs. The undersigned issued her decision awarding interim attorneys' fees and costs on the same day. On March 11, 2014, the undersigned consented to petitioner's Motion to Substitute Attorney John F. McHugh in place of attorney Michael Baseluos.

The undersigned held a status conference on March 21, 2014, during which petitioner's new counsel Mr. McHugh reported that petitioner has retained Dr. Bellanti, an immunologist, to prepare an expert report.  See Order dated March 21, 2014.  The undersigned ordered petitioner to file Dr. Bellanti's expert report, his CV, and any medical literature cited in his report by April 4, 2014.  Id.  The undersigned also discussed a previous case in which she ruled that hepatitis B vaccine caused petitioner's FSGS, a form of nephrotic syndrome.  Id.

On June 5, 2014, petitioner filed an expert report from Dr. Bellanti.  The undersigned held a status conference on June 25, 2014.  The undersigned ordered respondent to obtain and file responsive supplemental reports from his experts by August 15, 2014.  On August 12, 2014, respondent filed supplemental reports from his experts Dr. Kaplan and Dr. Levinson.

On August 29, 2014, the undersigned held a telephonic status conference.  The undersigned discussed the supplemental expert reports filed by respondent.  She ordered petitioner to file supplemental expert report(s) by November 10, 2014.  Petitioner filed Dr. Bellanti's supplemental expert report on January 12, 2015.  After filing three motions for extension of time, petitioner filed Dr. Quan's letter in response to Dr. Kaplan's expert report on January 26, 2015.

On January 30, 2015, the undersigned held a telephonic status conference, in which she discussed petitioner's supplemental expert reports from Dr. Bellanti and Dr. Quan.  Petitioner's counsel said he will communicate a settlement demand to respondent and file a status report by February 12, 2015.  On September 29, 2015, respondent filed supplemental expert reports in response to petitioner's supplemental expert reports.  During the status conference on October 22, 2015, the parties expressed that they were unable to settle because their valuations of damages in this case are too far apart.

On November 5, 2015, petitioner filed a life care plan assessed by Jane Mattsen.  The undersigned discussed the life care plan in a telephonic status conference on November 6, 2015.  See Order dated November 6, 2015.  She pointed out several items in the plan that she thinks are unnecessary for J.M.  Id.

During a telephonic status conference on January 14, 2016, the parties informed the undersigned that they agreed to mediate this case.  The parties were trying to decide who should be the mediator.  The undersigned ordered the parties to decide on whom they want to mediate by February 19, 2016.  On August 24, 2016, respondent filed a status report saying the parties participated in mediation in Dallas, Texas on August 23, 2016 and the mediation was not successful.  Respondent believed any further settlement negotiations would not be beneficial.  On September 20, 2016, a two-day entitlement hearing was set to begin on October 17, 2017 before the undersigned.

On August 30, 2017, petitioner filed an Application for Payment of Petitioners' [sic] Interim Expenses, asking for $79,034.50 in attorneys' costs and $25,438.65 in petitioner's personal costs.  Respondent filed his response to petitioner's motion on September 7, 2017.

The matter of petitioner's interim expenses application is now ripe for adjudication.

## FACTUAL HISTORY

In September 2007, J.M. was diagnosed with nephrotic syndrome. J.M. was put on prednisone which he continued taking until February 4, 2008. J.M.'s first relapse of his nephrotic syndrome occurred in February 2008. Ex. 1, at 24; Ex. 10, at 77. Following the first relapse, J.M. was put back on steroids which he took until March 24, 2008. Ex. 1, at 38. J.M. suffered from his second relapse on June 2009. Ex. 1, at 24; Ex. 10, at 77. He was weaned to a normal level of steroids in two weeks. Ex. 1, at 24. He went off the steroids in September 2009.

J.M. received his seasonal flu vaccination on October 1, 2009.

The timing of J.M.'s third relapse is in dispute. On October 9, 2009, Dr. Mouin Seikaly, J.M.'s primary care provider, wrote that J.M. was doing well until the past two weeks when he had an increase in his urine protein and developed edema. Ex. 10, at 72. The note was filed on October 24, 2009 but was taken on October 9, 2009, suggesting that J.M. had increased urine protein in late September before he received the flu vaccine. On the other hand, petitioner states in his affidavit that prior to his vaccination, J.M. had negative labs for three weeks. Petitioner states that after J.M.'s vaccination, his urine protein levels increased immediately and were markedly higher the next day. Ex. 5, at 1–2. This would be one week, not two weeks, before the October 9th visit to Dr. Seikaly. J.M.'s urine protein levels remained high for the following two weeks, at which point Dr. Seikaly confirmed it was a relapse of J.M.'s nephrotic syndrome. Ex. 5, at 2.

By November 4, 2009 and in less than two weeks, J.M. was weaned down to 10 mg of steroids. Ex. 10, at 7. When J.M. was weaned down to 10 mg every other day in December 2009, he experienced his fourth relapse. Ex. 2, at 12. He had his fifth relapse in March 2010. Ex. 7, at 1. He was not weaned off prednisone until April 20, 2010. Ex. 4, at 5.

J.M. started taking Prograf, an immunosuppressant medication, on June 25, 2010. Ex. 3, at 2. J.M. seemed to be doing better while on Prograf: he did not have any proteinuria or edema through January 2011 and had a normal appetite. Ex. 3, at 2. In late June 2011, J.M. was taken off Prograf. Ex. 5, at 2. His protein levels gradually climbed during July 2011, indicating a relapse. On August 15, 2011, J.M. started taking steroids again in an attempt to control the relapse. Ex. 10, at 82. He then suffered from three strokes which resulted in full paralysis on his left side. Ex. 10, at 82; Ex. 5, at 3.

## DISCUSSION

**I.      Entitlement to Fees and Costs Under the Vaccine Act**

Under the Vaccine Act, a special master or the U.S. Court of Federal Claims may award fees and costs for an unsuccessful petition if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought."  42 U.S.C. § 300aa-15(e)(1); Sebelius v. Cloer, 133 S. Ct. 1886, 1893 (2013).

"Good faith" is a subjective standard.  Hamrick v. Sec'y of HHS, No. 99-683V, 2007 WL 4793152, at *3 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).  A petitioner acts in "good faith" if he or she holds an honest belief that a vaccine injury occurred.  Turner v. Sec'y of HHS, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007).  Petitioners are "entitled to a presumption of good faith."  Grice v. Sec'y of HHS, 36 Fed. Cl. 114, 121 (Fed. Cl. 1996).

"Reasonable basis" is not defined in the Vaccine Act or Program rules.  It has been determined to be an "objective consideration determined by the totality of the circumstances." McKellar v. Sec'y of HHS, 101 Fed. Cl. 297, 303 (Fed. Cl. 2011).  In determining reasonable basis, the court looks "not at the likelihood of success [of a claim] but more to the feasibility of the claim."  Turner, 2007 WL 4410030, at *6 (citing Di Roma v. Sec'y of HHS, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)).  Factors to be considered include factual basis, medical support, jurisdictional issues, and the circumstances under which a petition is filed.  Turner, 2007 WL 4410030, at *6–9.  Traditionally, special masters have been "quite generous" in finding reasonable basis.  Turpin v. Sec'y of HHS, No. 99-564V, 2005 WL 1026714, at *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005); see also Austin v. Sec'y of HHS, 10-362V, 2013 WL 659574, at *8 (Fed. Cl. Spec. Mstr. Jan. 31, 2013) ("The policy behind the Vaccine Act's extraordinarily generous provisions authorizing attorney fees and costs in unsuccessful cases—ensuring that litigants have ready access to competent representation—militates in favor of a lenient approach to reasonable basis.").  Special masters have found reasonable basis to file a claim absent medical records or opinions supporting vaccine causation.  See Austin, 2013 WL 659574, at *8; Hamrick, 2007 WL 4793152.

### A.  Interim Fee Awards are Appropriate Under the Vaccine Act

The Federal Circuit ruled that interim fee awards are permissible under the Vaccine Act in Avera v. Secretary of Health and Human Services, 515 F.3d 1343, 1352 (Fed. Cir. 2008).  The Federal Circuit again found interim fee awards appropriate under the Vaccine Act in Shaw v. Secretary of Health and Human Services, 609 F.3d 1372 (Fed. Cir. 2010).

Subsequently, a number of judges and many special masters have found interim fee awards permissible under various circumstances.  See, e.g., Woods v. Sec'y of HHS, 105 Fed. Cl. 148, 154 (Fed. Cl. 2012) (Judge Williams affirmed the special master's award of interim fees and suggested that when counsel withdraws, and it is unclear how long case resolution might take, an interim award may be appropriate); Friedman v. Sec'y of HHS, 94 Fed. Cl. 323, 334 (Fed. Cl. 2010) (Judge Damich found that the statute permits interim fee awards and that the special master acted within his discretion in choosing not to award interim fees); Doe/11 v. Sec'y of HHS, 89 Fed. Cl. 661, 668 (Fed. Cl. 2009) (Judge Williams reversed the special master's denial of interim fees); Bear v. Sec'y of HHS, No. 11-362V, 2013 WL 691963, at *5 (Fed. Cl.

Spec. Mstr. Feb. 4, 2013) (former Special Master Hastings awarded interim fees over respondent's objection in a case where petitioner's counsel was going to withdraw, and the petition had been pending for more than 19 months); Lumsden v. Sec'y of HHS, No. 97-588, 2012 WL 1450520, at *6 (Fed. Cl. Spec. Mstr. Mar. 28, 2012) (former Chief Special Master Vowell awarded interim fees in an autism case over respondent's objection when petitioner's attorney was withdrawing from the case); Edmonds v. Sec'y of HHS, No. 04-87V, 2012 WL 1229149, at *13 (Fed. Cl. Spec. Mstr. Mar. 22, 2012) (then-Chief Special Master Campbell-Smith awarded interim fees over respondent's objection in an autism case in which petitioner's counsel was preparing to withdraw); Dudash v. Sec'y of HHS, No. 09-646V, 2011 WL 1598836, at *6 (Fed. Cl. Spec. Mstr. Apr. 7, 2011) (Special Master Moran found an award of interim fees appropriate); Burgess v. Sec'y of HHS, No. 07-258V, 2011 WL 159760, at *2 (Fed. Cl. Spec. Mstr. Jan. 3, 2011) (Former Special Master Lord awarded interim attorneys' fees in a case where petitioners were soon to be represented by other counsel).

### B. Interim Fees and Costs are Appropriate in This Case

In Avera, the Federal Circuit held that while interim fees are not banned by the statute, they were not appropriate in that case because appellants sought only higher fees after dismissal of their case. 515 F.3d at 1352. The Federal Circuit stated, "[i]nterim fees are particularly appropriate in cases where proceedings are protracted and costly experts must be retained." Id. In denying an interim fee award, the Federal Circuit reasoned, "The amount of fees here was not substantial; appellants had not employed any experts; and there was only a short delay in the award pending the appeal." Id.

In Shaw, the Federal Circuit clarified that "where the claimant establishes that the cost of litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." 609 F.3d at 1375. The U.S. Court of Federal Claims and several special masters have found an interim fee award appropriate when petitioner's counsel withdraws from the case. See Woods, 105 Fed. Cl. at 154; Bear, 2013 WL 691963 at *5; Lumsden, 2012 WL 1450520 at *6; Edmonds, 2012 WL 1229149 at *13; Burgess, 2011 WL 159760 at *2.

Respondent did not raise any specific objections to petitioner's fee application in his response to petitioner's Application for Payment of Petitioners' [sic] Interim Expenses. Instead, respondent said he "defers to the [undersigned] to determine whether or not petitioner has met the legal standard for an interim award as set forth in Avera." Resp. at 2.

### 1. Good Faith & Reasonable Basis

Petitioner is entitled to a presumption of good faith. There is no evidence that this petition was brought in bad faith. Therefore, the undersigned finds that the good faith requirement is met.

The undersigned also finds that petitioner had a reasonable basis to file the petition. J.M.'s medical records support that he had the injuries complained of in the petition, namely a relapse of his nephrotic syndrome. Dr. Quan, a reputable doctor with excellent credentials, was willing to write three medical expert reports supporting petitioner's claim. See Exs. 7, 21, 40. Therefore, the undersigned finds that petitioner had a reasonable basis to bring this claim.

### 2. Protracted Proceedings

Additionally, interim attorneys' fees and costs are appropriate because waiting for the conclusion of the case would place an undue hardship on petitioner. Petitioner's case has been pending for almost five and a half years. A two-day entitlement hearing is set to begin on October 17, 2017. See Order dated September 20, 2016. It may be months to years before an entitlement ruling is issued. Thus, the undersigned finds an award of interim fees and costs appropriate at this juncture in the case.

### II.     Reasonableness of Requested Attorneys' and Petitioner's Personal Costs

Petitioner is not seeking attorneys' fees at this time. Petitioner requests attorneys' interim costs in the amount of $79,034.50 and petitioner's personal costs in the amount of $25,438.65, for a total request of $104,473.15. Attorneys' costs must be reasonable. See Perreira v. Sec'y of HHS, 27 Fed. Cl. 29, 34 (Fed. Cl. 1992) ("The conjunction 'and' conjoins both 'attorneys' fees' and 'other costs' and the word 'reasonable' necessarily modifies both. Not only must any request for reimbursement of attorneys' fees be reasonable, so also must any request for reimbursement of costs."). The undersigned finds the majority of petitioner's attorneys' and personal costs request reasonable. However, the rates requested for petitioner's immunological expert Dr. Bellanti and petitioner's life care planner Jane Mattson are excessive.

### A. Dr. Bellanti

Petitioner asks for $26,275 in costs for the time that his immunological expert, Dr. Bellanti, spent working on the case. Ex. 80, at 2. Dr. Bellanti expended 52.55 hours on the case and charged a rate of $500.00 per hour. Id. The undersigned finds the hourly rate requested for Dr. Bellanti is excessive and he is wrong about the number of hours he spent on the case.

### 1. Hourly Rate

Dr. Bellanti was compensated at the rate of $350.00 per hour by other special masters. See Turpin v. Sec'y of HHS, No. 99-535V, 2008 WL 5747914, at *10 (Fed. Cl. Spec. Mstr. Dec. 23, 2008). See also Savin v. Sec'y of HHS, No. 99-537V, 2008 WL 2066611, at *4 (Fed. Cl. Spec. Mstr. April 22, 2008). Petitioner has not submitted any documentation justifying Dr. Bellanti's hourly rate. Therefore, the undersigned finds that the appropriate hourly rate for Dr. Bellanti's work performed in 2014 is $400.00.

### 2. Number of Hours

According to Dr. Bellanti's invoice, he was working on the case from August 11, 2013 through June 3, 2014. However, no records indicate Dr. Bellanti started working on this case before March 2014, when Mr. McHugh became petitioner's counsel. On November 15, 2013, respondent filed an immunological expert report from Dr. Levinson. On December 3, 2013, the undersigned held a telephonic status conference, during which petitioner's prior counsel Mr. Michael Baseluos expressed an interest in using Dr. David Axelrod, an immunologist, to counter Dr. Levinson's expert report. See Order dated December 3, 2013. On February 18, 2014, petitioner filed a motion for substitution of counsel. On March 11, 2014, the undersigned consented to petitioner's Motion to Substitute Attorney John F. McHugh in place of Attorney Michael Baseluos. During a telephonic status conference held on March 21, 2014, Mr. McHugh reported that petitioner retained Dr. Bellanti to prepare an expert report, and that Dr. Bellanti was reviewing the records. See Order dated March 21, 2014. Therefore, the undersigned removes every fee dated August 11, 2013 through March 11, 2014 and reduces the number of hours Dr. Bellanti's spent on the case by 39.25 hours. The undersigned considers the 13.3 hours Dr. Bellanti billed after March 11, 2014 to be reasonably expended. Because his hourly rate is $400 per hour, the total amount of compensation for Dr. Bellanti is $5,320.00.

The undersigned does not have any problem with the other attorneys' expenses.

### B. Fees for Life Care Plan

Petitioner's life care planner Jane Mattsen charged a total of $24,222.00. Ex. 88, at 1. Ms. Mattsen provided neither the number of hours she spent on the case nor her hourly rate. The undersigned finds a total of 80 hours and an hourly rate of $250.00 reasonable in the instant case.

In 2007, the undersigned compensated the petitioner for the services of life care planner Linda K. Graham at an hourly rate of $150.00 and 116 hours in the amount of $17,400.00. Paul v. Sec'y of HHS, No. 05-886V, 2007 WL 4577394, at *6 (Fed. Cl. Spec. Mstr. Dec. 13, 2007). Paul concerned a child who suffered an on-Table encephalopathy after receiving MMR vaccine. Id. at *1. She had a generalized epilepsy, delay in motor function, and mental incapacity. The damages were a lump sum payment of over one million dollars plus an annuity. Because J.M.'s injuries are not as severe as those of the child in Paul, Ms. Mattsen does not need to expend the same amount of time on J.M.'s life care plan as Ms. Graham did in Paul.

In 2013, the undersigned compensated petitioner's life care planner Liz Holakiewicz at an hourly rate of $225.00 and 169.83 hours for a total of $38,210.64. Brown v. Sec'y of HHS, No. 09-0426V, 2013 WL 1790212 at *5 (Fed. Cl. Spec. Mstr. April 8, 2013). In Brown, the undersigned explains that an hourly rate of $225.00 is reasonable given Ms. Holakiewicz's more than twenty-five years of experience and credentials. The undersigned notices that Ms. Mattsen has 34 years of experience and a PhD in health policy. However, there is a significant difference between the instant case and Brown. In Brown, petitioner was paralyzed on one side

of his body and needed to live in a nursing home the rest of his life.  Unlike petitioner in Brown, J.M.'s injuries do not seem so severe that he needs to live in a nursing home the rest of his life. See Order dated November 6, 2015.  He is capable of walking and going to a restaurant.  Thus, the kind of work Ms. Mattsen needs to do with petitioner's son does not compare with that of Ms. Holakiewicz in Brown.

Moreover, Ms. Mattsen failed to provide her hourly rate and specific billing entries, indicating the tasks performed and the number of hours she expended on the task, for the undersigned to evaluate her fee request.  Therefore, the undersigned finds that it is reasonable to compensate at an hourly rate of $250.00 and a total of 80 hours for Ms. Mattsen's service.  The total amount of compensation for Ms. Mattsen's fees is $20,000.00.  Since this is a decision for awarding attorneys' interim costs, Ms. Mattsen can supplement her fee request with details after the case is decided.

The undersigned has no problem with the $1,216.65 for miscellaneous expenses.

## CONCLUSION

The undersigned finds an award of attorneys' interim and petitioner's personal costs appropriate.  She also finds that the majority of the amount petitioner asks for in his application for attorneys' interim and petitioner's personal costs is reasonable.  **Accordingly, the court awards:**

   a. **$58,144.84**, representing attorneys' costs.  The award shall be in the form of a check made payable jointly to petitioner and The Law Office of John McHugh in the amount of **$58,144.84**; and

   b. **$21,216.65**, representing petitioner's personal costs.  The award shall be in the form of a check made payable to petitioner for **$21,216.65.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[3]

**IT IS SO ORDERED.**

Dated: October 4, 2017                                    /s/ Laura D. Millman
                                                              Laura D. Millman
                                                              Special Master

---

[3] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.